[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties herein are each small manufacturing corporations. The plaintiff, Continental Machine Tool Co., Inc. (hereinafter "Continental") seeks damages for breach of contract from the defendant, Aircraft Welding Manufacturing Co., Inc. (hereinafter"Aircraft"); and, from the defendant, Tube Bends, Inc. (hereinafter "Tube Bends") for breach of its subcontract with Aircraft.
The issues raised in this action result, in part, from the incorporation of certain specifications, set out in a contract which Continental had with a division of the United States Government, into the contract between Continental and Aircraft. These specifications set out in exacting detail the procedural and operational steps to be carried out in manufacturing the items herein involved.
This action evolves from prior contracts that Continental entered into with a United States governmental agency wherein Continental was to manufacture certain aircraft engine titanium bearing housings. The number of bearing housings that are at issue in the contract between Continental and Aircraft is 47.
Continental, in carrying out the terms of its contract with the governmental agency completely manufactured each of the 47 CT Page 5114-V bearing housings. It then was determined through tests that the last manufacturing operation, i.e., the drilling of oil supply holes was not in conformity with the dimensional requirements set out in the governmental agency's blue print requirements. This error rendered each of the 47 bearing housings in non-compliance with the contract between Continental and the government. Continental in an attempt to salvage these 47 housings investigated the possibility of repairing or retrofitting the out-of-compliance oil drill holes.
At this point the defendant, Aircraft, entered the picture. Continental consulted with Aircraft as to a method of performing viable repairs to the oil holes. Aircraft, advised filling the oil holes with a titanium weld then redrilling the oil holes. To accomplish this Continental would need to obtain a waiver from the governmental agency. The waiver would permit a modification of the contract to allow for the filling of the holes with welding material and a redrilling of oil holes.
To accomplish this also required that the contract between Continental and the agency include those governmental specifications applicable to the welding of titanium, in addition to the requirements set out in the original contract regarding inspections and testing. Further, if any of this welding, and/or additional work required under the waiver it would have to be performed by contractors authorized by the government. All parties herein were government authorized to perform the work each undertook to carry out.
Continental obtained the previously mentioned waiver from the governmental agency and proceeded with its plan to have welded the non-conforming oil holes and then to redrill them. To have the oil holes welded it needed to subcontract this welding operation to an authorized welder since it, Continental, was not a government authorized welder. It entered into a contract with the defendant, Aircraft, to perform the welding. That contract (Plaintiff's Exhibit No. 14) was drafted as a purchase order from Continental to Aircraft dated August 31, 1992. Upon receipt of the purchase order from Continental, Aircraft proceeded to process the work. One of the requirements of the purchase order, in addition to the weld repair, was to have the. part cleaned and tested. Aircraft was not approved (certified) by the government to perform the required cleaning, thus it subcontracted the cleaning to the defendant, Tube Bends, a government approved provider of these cleaning services. CT Page 5114-W
Both Aircraft and Tube Bends carried out the particular work process asked of it. Further, each provided certification that the work processed was in accord with the applicable government specifications.
However, when the parts processed by Aircraft and Tube Bends were returned to Continental, it, Continental, determined that the parts were not processed in accordance with the purchase order issued by Continental to Aircraft. Hence this action.
The issues presented are, broadly, Did Aircraft carry out the terms of the purchase order issued to it by Continental? If not, in what way did it fail to carry out the contract terms?
Further, if Tube Bend's processing of the parts was not in compliance with Continental's purchase order to Aircraft, is Tube Bends liable to Continental for this failure?
Finally, if Continental suffered damages as a result of Aircraft's or Tube Bend's noncompliance with the purchase order, what is the responsibility owed to Continental by each or both with regard to that damage?
The court after hearing the witnesses presented by the parties, examining the exhibits, reviewing the briefs and arguments advanced by each of the parties, and apply the applicable law, finds the following:
That the plaintiff, Continental, and the defendant, Aircraft, entered into a contract by way of a purchase order. (Plaintiff's Exhibit No. 14). That purchase order set out the terms and conditions required to be performed by Aircraft in repair welding 47 rear compressor bearing housings. That those terms and conditions included cleaning in preparing for welding, and the welding to be in an enclosed atmosphere as set out in Lycoming Specification P6207.
Specification P6207 also set out the cleaning procedure and cleaning materials as well as time periods in the cleaning process.
The terms and specifications set out in Lycoming Specification P6207 were not carried out by Tube Bends, although a certification was issued by Tube Bends that it had carried out CT Page 5114-X those P6207 requirements. That the failure of Tube Bends to comply with the P6207 requirements resulted in the noncompliance with the terms of the contract between Continental and Aircraft.
Further, that noncompliance by Tube Bends with the specifications set out in P6207 resulted in the bearing housing being adversely affected dimensionally and in the surface finish to the extent that the bearing housings were determined by Continental to be unfit for its purpose as a rear bearing housing for a Lycoming turbine engine.
The court further finds that in the contracting process where the government was the primary contractor, each of the vendors involved would issue certifications as to the compliance with the governmental requirements as to the particular process carried out by the Vendor issuing the certification. Further, the certification, by a vendor who was a subcontractor, would be incorporated into the certification issued by the contractor who had retained the subcontractor. That is, each contractor would become responsible for its subcontractor's compliance with the specifications set out for the subcontractor's portion of the work, as well as for its own.
Thus, when Aircraft subcontracted the cleaning portion of its contract to Tube Bends, it, Aircraft, became responsible to have Tube Bends carry out the terms of Continental's purchase order applicable to the work performed by Tube Bends.
This chain of responsibility also resided in Continental in its contract with the government. Insofar as Continental was the prime contractor for these parts it would certify that all the materials and workmanship and procedures were in accord with the prime contract it had with the government, whether the work was carried out by it, Continental, or by its subcontractor or by any subcontractor of those subcontractors.
There was therefore a chain of decreasing responsibility from the prime contractor with the government to the last subcontractor.
On the other hand, the subcontractor in issuing its certification as to the work it performed was making this certification for the benefit of each of the contractors in the chain who necessarily had to rely on the workmanship performed by the preceding subcontractors. CT Page 5114-Y
Thus, the certification requested from each contractor or subcontractor was of vital importance to those contractors who performed subsequent work on the part or product. It, therefore follows, that those subsequent contractors had a responsibility as well as a self-interest in providing all necessary information to its subcontractor as well as in keeping informed that the subcontractor did carry out the terms and specifications relating to the work performed by that subcontractor.
Therefore, the system of certification places the responsibility for compliance by a subcontractor on not only the contractor that issues the subcontract but any contractor prior to that contract up to and including the prime contractor. In the present case, the prime contractor with the government was Continental, its subcontractor herein was Aircraft, and Aircraft subcontracted with Tube Bends. Tube Bends certified that it performed the services set out in its formal certification to Aircraft. Aircraft in turn certified to Continental that the work it contracted to perform, including that performed by Tube Bends, was performed as required. Continental, in turn, had the responsibility to certify to the government that the full terms of its contract with the government were complied with including those processes carried out by each subcontractor.
This certification procedure was based upon certain providers of services to whom were issued formal Quality Supplier Capability Listing certificates. (See Defendant's H(A)). Those individual providers of specific services were pre-approved by the government for subcontracting work under government contracts. In return, that provider would certify that the required procedures and/or specifications were complied with. Therefore, each such provider knew that its certifications was provided for the benefit of all contractors affected by its work, including that of the prime contractor, in this case, Continental, and of the source of the original order, in the present case the government.
As a result of this intricate and interlocking relationships among the contractors or providers, it was incumbent upon each contractor to provide all subcontractors with all necessary information to carry out the processes assigned to it, and, further to determine that in fact the processes assigned were carried out. CT Page 5114-Z
In the present instance, the prime contractor, Continental had the responsibility for the work performed by each of the subcontractors. That responsibility requires contact with and necessary oversight of the performance by subcontractors. A failure to carry out these responsibilities by any contractor may not be excused on the grounds that the actual fault or error was the subcontractor's. The contractor is responsible for the errors of its subcontractor to its own contractor.
Thus, any errors by Tube Bends becomes the responsibility of Aircraft as the contractor with Tube Bends. This responsibility of Aircraft is owed to Continental under its contract with Continental.
However, Tube Bends responsibility is not limited to Aircraft alone. Its certification of compliance was provided in conformance with requirements set out in governmental contracts which all parties herein have participated in and were aware of. Thus, Tube Bends knew that the subcontract it was performing for Aircraft was by its terms, i.e., references to specifications and certifications, was for the benefit of third parties. It cannot now attempt to shield itself from the claim of Continental on the basis of lack of privity of contract, nor because it was unaware of the identity of that third party.
Therefore, the court concludes, that the terms of the purchase order issued by Continental to Aircraft also extended to Tube Bends to the extent that it perform services at Aircraft's request for which Tube Bends issued a certification.
As to Aircraft, it had a duty to provide Tube Bends with those requirements and specifications set out in the purchase order from Continental. It further had the responsibility to oversee, or at least to determine that Tube Bends carried out the specification which it certified since it (Aircraft) within its own certification to Continental affirmed that those specifications were complied with.
Further, Continental, under its contract to the government was to certify that all contractual terms and specifications were met. That certification implied that it had specific knowledge that Aircraft and Tube Bends did in fact carry out those facts, to which each certified, were performed.
Continental failed in its role as prime contractor to CT Page 5114-AA ascertain that the terms of its purchase order with Aircraft which were certified to by Aircraft were in fact performed.
Thus, Continental failed its supervisory duty as to both Aircraft and Tube Bends.
Therefore, the court determines that each of the three parties were equally at fault herein. That, the fault of each resulted in the failure to comply with the terms of the purchase order, causing the attempt by Continental to repair the bearing housings to be unsuccessful.
The court further, finds that Continental, under its contract with the government would have received $898.95 for each of the 47 bearing housings which successfully met the contract specifications. Continental's inability to deliver these 47 bearing housings in accordance with its contract caused it damages of 47 x $898.95 or the sum totaling $42,250.65. Of this total each party is liable for one-third or $14,083.55.
The court therefore, Orders, that:
Judgment is to enter for the plaintiff, Continental Machine Tool Company, Inc. as against the defendant, Aircraft Welding and Manufacturing Company, Inc. in the sum of $14,083.55; and, for said Continental Machine Tool Company, Inc., as against the defendant, Tube Bends, Inc. in the sum of $14,083.55.
No costs are to be assessed against any party.
JULIUS J. KREMSKI, STATE TRIAL REFEREE